IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ROBERT GREER and JAMES REIMER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STRANGE HONEY FARM, LLC, a domestic limited liability company, GARY STRANGE and FONDA STRANGE, owners and members,<br><br>Defendants. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiffs, Robert Greer ("Greer") and James Reimer ("Reimer") (jointly "Plaintiffs), by and through their undersigned counsel, on behalf of themselves and all others similarly situated, for their Class Action Complaint against Defendants, Strange Honey Farm LLC, ("Strange Honey") and Gary Strange and Fonda Strange, its owner members, ("owner members") allege, upon knowledge as to matters relating to themselves and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. This is a consumer class action against Strange Honey and its owner members for its marketing and sale of certain honey products. Strange Honey markets and sells its honey as being 100 % raw honey from Tennessee. In fact, the honey that Strange Honey sells is not from Tennessee, is not raw, and is not 100% honey. Strange Honey is not raw because it heats its products in order to make it easier to package and bottle. When it heats or cooks its honey, Strange Honey destroys the enzymes found in raw honey and for which raw honey is prized. In addition,

Strange Honey purchases honey from a variety of sources outside Tennessee, including Vietnam. Finally, Strange Honey or one of its suppliers adds syrup to the honey as syrup is much cheaper than honey.

2. Strange Honey's products are not as advertised and Plaintiffs bring this action both to recover the amounts they and the Class (as defined below) overpaid for Strange Honey's products and for an injunction requiring Strange Honey to stop cooking its honey, to truthfully disclose the source of its honey and to stop adding syrup to its honey products. Strange Honey must either take those steps or stop advertising and marketing its products as "raw, 100% pure Tennessee Honey."

## PARTIES

3. Plaintiff, Robert Greer, is a citizen and resident of Knoxville, Tennessee. Plaintiff does his own grocery shopping.

4. Plaintiff James Reimer is also a citizen and resident of Knoxville, Tennessee. Like Plaintiff Greer, Mr. Reimer does his own grocery shopping.

5. Defendant, Strange Honey Farms LLC, is a domestic limited liability company organized under the laws of Tennessee and has its chief executive offices and principal place of business at 245 Highway 107 S, Del Rio, Tennessee.

6. Defendant Gary Strange is an owner member of Strange Honey. Mr. Strange is also the president of Strange Honey. On information and belief, Mr. Strange's wife, Fonda Strange, is also a member of the LLC.

7. Strange Honey processes its honey at its Del Rio location.

8. At all relevant times, Strange Honey transacted and conducted business in Tennessee and throughout much of the United States.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) (2) (diversity jurisdiction and the Class Action Fairness Act) in that (i) there is minimal diversity because even though Plaintiffs are citizens of Tennessee, they seek to represent a class of consumers who purchased honey in Tennessee and some of the class members are not Tennessee residents and Defendant is a citizen of Tennessee, (ii) the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and (iii) there are 100 or more members of the class.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because (i) Strange Honey resides in this judicial district, (ii) a substantial part of the events or omissions giving rise to Plaintiffs' and the Class's claims occurred in this judicial district, and (iii) Strange Honey is subject to personal jurisdiction in this judicial district because it is doing business here, transacts business here, and caused tortious injuries by an act or omission here.

## GENERAL ALLEGATIONS

11. This case concerns Strange Honey's marketing and sale of various honey products.

12. Honey is a natural product produced by honeybees that is composed of water, various sugars, and a variety of desirable compounds including antioxidants as well as minerals, proteins, enzymes, amino acids, and organic acids.

13. Due to the presence of these compounds, honey is considered healthful, nutritional and medicinal.

### Strange Honey's Labeling

14. Strange Honey's labels describe the honey as 100% raw Tennessee honey. Some of its product labels are reproduced below.

15. Strange Honey's labels are false and misleading. The honey is neither raw, nor is it from Tennessee. In fact, the most recent Strange Honey that has been tested is from Vietnam. Moreover, it is not 100% honey. Syrup has been added to the honey, because syrup is much cheaper—about one tenth the price of pure honey.

**Strange Honey's Products**

16. Contrary to Strange Honey's labeling, Strange Honey is not pure and it is not from Tennessee. So, when the label identifies the honey as "100% pure Tennessee Mountain Sourwood Honey," it is both false and misleading. The honey also is not derived from Sourwood.

17. Similarly, Strange Honey's Wildflower Honey is not from Tennessee and has had syrup added to it. Thus, the honey products are adulterated and are not really "honey" as the term is understood both in the industry and by consumers and it does not come from Tennessee.

18. Finally, Strange Honey labels its honey as "Raw." In fact, it is not raw.

19. While it is common to gently heat honey to make it easier to process and package, Strange Honey heats its honey products above 105 degrees Fahrenheit (°F), which has many undesirable effects.

20. Heating honey above 105 °F destroys many of the beneficial compounds (such as the enzymes) found in raw honey and for which raw honey is prized by consumers.

21. One way to determine whether honey has been heated is to test its 5-hydroxymethylfurfural ("HMF") value.

22. HMF is an organic compound formed when honey is heated enough to degrade its sugars through the Maillard reaction (a chemical reaction between amino acids and reducing sugars).

23. Raw honey typically comes out of the beehive with an absence of any HMF, or with an HMF value in the single digits (that is, an HMF value of 1 mg/kg to 9 mg/kg).

24. However, raw honey heated above 105 °F has an elevated HMF value.

25. The scientific community has long recognized that an HMF value over 40 mg/kg is strong evidence that raw honey was heated to a high enough temperature for a long enough period of time to break down the enzymes contained in the honey.

26. Accordingly, the Codex Alimentarius promulgated an international standard under which raw honey cannot have an HMF value over 40 mg/kg. It also promulgated a standard under which table honey cannot have an HMF value above 80.

27. The Codex Alimentarius's standard ensures that raw honey has not undergone extensive heating.

28. The Codex Alimentarius is recognized by the World Trade Organization as an international reference standard for the resolution of disputes concerning food safety and consumer protection.

29. Samples of Strange Honey recently purchased by the Plaintiffs from stores near their homes had measured HMF values of 109, 96, 88, 122, 57, 64 and 75 mg/kg, many times higher than the maximum limit of 40 mg/kg for table honey.

30. These eight samples also have been identified as being from Viet Nam (not Tennessee as the label states) and all of them have had syrup added. Syrup is much cheaper than honey. Summaries of these eight tests are attached as Exhibit A.

31. These extraordinarily high HMF values indicate that Strange Honey has been heated at high temperatures for an extended period of time.

## Strange Honey's Knowledge

32. Strange Honey cannot collect enough honey from its own hives and other Tennessee hives to keep up with demand. Strange Honey therefore purchases honey from various out of state and out of country suppliers.

33. Consumers (like Plaintiffs and the Class) have a reasonable expectation that Strange Honey will not be sourced from Vietnam, will not have syrup added to it and will not be heated excessively to the point that the honey's enzymes break down.

34. Consumers (like Plaintiffs and the Class) also have reasonable expectations that Strange Honey's honey will have the properties generally found in honey and as reflected on the label, including the health benefits of the enzymes, antioxidants, and other compounds found in honey.

35. Strange Honey knew (or was reckless in not knowing) that its honey products were shipped to this country from Vietnam, had syrup added to the honey and was heated excessively to the point that it no longer contained enzymes, antioxidants, or the other compounds found in honey that consumers expect.

36. At all relevant times, Strange Honey knew or should have known that its honey was (a) defective, (b) adulterated with syrup, (c) did not have the attributes of raw honey, and (d) the defects, if known, would have failed to meet the reasonable expectations of consumers and would not have been sold at the prices Strange Honey charges for its honey products.

37. At no time did Strange Honey take any action to: (a) inform purchasers of the defects in its honey or (b) recall its honey. Strange Honey concealed this knowledge from Plaintiff and the Class.

38. Strange Honey has sold, directly or indirectly (through grocery stores, health food stores, specialty retailers, and other retail outlets) thousands of bottles of honey products in Tennessee and across the United States.

39. Plaintiffs and the Class have not received the value for which they bargained when they purchased Strange Honey honey products. There is a difference in value between the Strange Honey products as labeled and advertised and the Strange Honey's product as it actually exists.

## CLASS ALLEGATIONS

40. Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

41. The requirements of Rule 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the class (referred to herein as the "Class") defined below:

> All persons and entities who purchased any Strange Honey honey products in Tennessee during the applicable limitations period. Excluded from the Class are: (a) any judge or magistrate judge presiding over this action and members of their families; (b) Strange Honey LLC and any entity in which it has a controlling interest or which has a controlling interest in Strange Honey and Strange Honey's legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

42. *Numerosity*: The Class is composed of at least hundreds if not thousands of persons geographically dispersed, the joinder of whom in one action is impractical.

43. *Commonality*: Questions of law and fact common to the Class exist as to all proposed members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

a. Whether Strange Honey's honey is not from Tennessee but rather from outside Tennessee and the country;

b. Whether Strange Honey's honey products contains syrup;

c. Whether Strange Honey's honey is heated excessively;

d. Whether Strange Honey knew or should have known of the defects;

e. Whether Strange Honey concealed from consumers and/or failed to disclose to consumers the defects;

f. Whether the labeling on Strange Honey bottles is false or misleading;

g. Whether Plaintiff and the proposed Class members are entitled to compensatory damages, including, among other things: (i) compensation for all monies paid by members of the Class for Strange Honey's honey products; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the honey as advertised and the honey as it really is;

h. Whether the honey conforms to the applicable industry standards;

i. Whether Strange Honey concealed the defective nature of the honey;

j. Whether Strange Honey's conduct as alleged is misleading, deceptive and/or unconscionable.

44. *Typicality*: Plaintiffs' claims are typical of the claims of the proposed members of the Class, as all such claims arise out of Strange Honey's conduct in heating, packaging and bottling its honey product as well as its marketing, advertising and selling the defective honey.

8
Case 3:19-cv-00518-PLR-DCP   Document 1   Filed 12/17/19   Page 8 of 15   PageID #: 8

45. *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the proposed Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving mislabeling, product liability and product design defects.

46. *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court and Courts throughout Tennessee and the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COUNT I

## FRAUDULENT CONCEALMENT

47. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

48. Strange Honey knew or should have known that its honey was defective, not fit for its ordinary and intended use, and did not perform in accordance with either the advertisements, labels and marketing materials of Strange Honey, or to the reasonable expectations of ordinary consumers including Plaintiffs.

49. Strange Honey fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that its honey was from Vietnam, contained syrup and was cooked. Strange Honey had exclusive knowledge of the defective nature of its honey at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

50. Strange Honey had the capacity to, and did, deceive Plaintiffs and the Class into believing that they were purchasing raw 100% pure Tennessee honey that had been harvested in Tennessee, did not contain syrup and had not been excessively heated, and was otherwise free from defects.

51. Strange Honey undertook active and ongoing steps to conceal the defects. Plaintiffs are aware of nothing in Strange Honey's labeling, advertising, publicity or marketing materials that disclosed the truth about its honey, despite Strange Honey's awareness of the problem.

52. The facts concealed and/or not disclosed by Strange Honey to Plaintiffs and the Class members are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the honey.

53. Strange Honey intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiff and the Class to act thereon.

54. Plaintiff and the Class justifiably acted and relied upon the concealed and/or misrepresented the facts to their detriment, as evidenced by their purchase of the honey.

55. Plaintiff and the Class suffered a loss of money in an amount to be proven at trial as a result of Strange Honey's fraudulent concealment and nondisclosure because: (a) they would

10
Case 3:19-cv-00518-PLR-DCP   Document 1   Filed 12/17/19   Page 10 of 15   PageID #: 10

not have purchased the honey on the same terms if the facts concerning the defective honey had been known; (b) they paid a price premium because they believed the honey would be and was otherwise free from defects.

56. By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

## COUNT II

## COMMON LAW FRAUD

57. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

58. The Defendants made representations of existing material facts, including that the honey was raw (false); the honey was pure (false); and the honey was from Tennessee (false).

59. These representations were false when made.

60. These representations were made either knowingly or with reckless disregard as to their veracity.

61. Plaintiffs and the Class reasonably relied on the misrepresented material facts.

62. Plaintiffs and the Class suffered damage as a result of the misrepresentations.

## COUNT III

## NEGLIGENT MISREPRESENTATION

63. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

64. The Defendants supplied information to the Plaintiffs in the form of advertising and labeling. This information included the following representation: Strange Honey is raw, 100% pure and from Tennessee.

65. This representation was false in all respects.

66. The Defendants did not exercise reasonable care in obtaining or communicating this information.

67. The Plaintiffs justifiably relied on these misrepresentations to their detriment and were injured thereby.

## COUNT IV

## DECLARATORY RELIEF

68. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

69. A justiciable controversy of fact exists such that the Court may provide declaratory relief.

70. Defendant has acted or refused to act on grounds that apply generally to the Class, so that final declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

71, Plaintiff seeks a declaratory ruling that: the honey has a defect caused by Strange Honey's purchasing Vietnamese honey with syrup added, as well as its processing, heating and bottling methods, which overheats the honey and causes the enzymes normally found in raw honey to break down and lose the physical properties people expect in "raw" honey; that these defects

are material and require public disclosure on all honey sold by Strange Honey over the last 3 years; that Strange Honey establish a testing program and protocol, under Court supervision and communicated to Class members, which will require Strange Honey to inspect all of its purchased honey products for origin, to inspect its syrup before and after bottling to ensure that the honey is in fact from Tennessee and has not had syrup added, and to not excessively heat their honey for a period of five (5) years.

## COUNT V

## INJUNCTIVE RELIEF

72. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

73. Plaintiff and the Class possess clearly ascertained rights in need of protection; namely, the right to receive the product as represented and advertised and the right to truth in labeling of Strange Honey's honey products.

74. Plaintiff and the Class are likely to succeed on the merits of their claims.

75. Plaintiff and the Class will suffer irreparable harm without an injunction. In particular, Plaintiff and the Class will not be able to accurately evaluate, and pay the proper price for, Strange Honey's honey products unless an injunction is issued requiring Strange Honey to either (a) market, distribute, and accurately labeled honey or (b) refrain from selling honey under its Strange Honey label that has been acquired outside of Tennessee, uses added syrups, and/or has been cooked/processed at unacceptable industry standard levels.

76. Plaintiff and the Class have no adequate remedy at law. Although Plaintiff and the Class are entitled to monetary damages resulting from Strange Honey's false labeling and

advertising practices, Plaintiff and the Class cannot readily quantify the damages for the lost health benefits going forward from Strange Honey's deceptive acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for a judgment against Defendants as follows:

    a.    For an order certifying the Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and appointing the law firms representing Plaintiffs as Class Counsel;

    b.    For compensatory damages sustained by Plaintiffs and the Class;

    c.    For equitable, declaratory, and/or injunctive relief as requested herein;

    d.    For payment of costs;

    e.    For both pre-judgment and post-judgment interest on any amounts awarded;

    f.    For punitive damages;

    g.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

    h.    For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demands a trial by jury as to all issues so triable.

Dated: December 17, 2019                    Respectfully Submitted,

**HOLIFIELD JANICH & FERRERA, PLLC**

By: /s/ Al Holifield
    Al Holifield (Bar No. 015494)
    E-mail: aholifield@holifieldlaw.com
    11907 Kingston Pike, Suite 201
    Knoxville, TN 37934
    Phone: (865) 566-0115

**KENT A. HEITZINGER & ASSOCIATES**

By: /s/ Kent A. Heitzinger
    Kent A. Heitzinger Illinois Bar No. 3123385
    E-mail: heitzinger.law@gmail.com

    1056 Gage St., # 200
    Winnetka, IL 60093
    Phone: (847) 446-2430

*(Pro Hac Vice To Be Filed)*

**THE LAW OFFICE OF TERRENCE BUEHLER**

By: /s/ Terrence Buehler
    Terrence Buehler Illinois Bar No. 6181738
    E-mail: tbuehler@tbuehlerlaw.com

    1 South Wacker Drive, Suite 3140
    Chicago, IL 60606
    Phone: (312) 371-4385

*(Pro Hac Vice To Be Filed)*